FILED
Clerk
District Court
JUN 01 2023
for the Northern Mariana Islands
By_____JP_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| UNITED STATES OF AMERICA, | Case No.: 1:23-cr-0002 |
|---|---|
| Plaintiff, | |
| v. | MEMORANDUM DECISION DENYING PETITION TO REVOKE PRETRIAL RELEASE |
| KENNETH L. GOMEZ, | |
| Defendant. | |

### I.  INTRODUCTION

Before the Court is a Petition for Action on Conditions of Pretrial Release (ECF No. 29) filed by the U.S. Probation Office and Assistant U.S. Attorney Albert S. Flores, Jr., supported by the declaration of U.S. Probation Officer Juanette David-Atalig (Decl., ECF No. 29-1) all pursuant to 18 U.S.C. § 3148(b) governing sanctions for violating release conditions. It is alleged that Defendant Kenneth L. Gomez ("Gomez") violated his terms of pretrial release for use of methamphetamine as indicated by a sweat patch applied on his person on March 23, 2023 and removed on March 27, 2023. (Decl. 3.) Defendant denies using any illicit drugs and maintains that he has been sober since his release from the Commonwealth of the Northern Mariana Islands Department of Corrections ("DOC") on March 21, 2023. The Court held an evidentiary on June 1, 2023. (Mins., ECF No. 38.) Based on the evidence received, the Court concluded that the Government failed to establish by clear and convincing evidence that Gomez violated his condition of release and denied the petition to revoke pretrial release. (*Id.*) The Court now issues this decision to memorialize its rationale.

## II. PROCEDURAL BACKGROUND

The Government filed an Information charging Gomez with two counts: bribery of a public official and conspiracy to bribe a public official. (ECF No. 3.) At his initial appearance before Magistrate Judge Heather L. Kennedy, Gomez waived his right to an indictment and entered a plea of guilty as to both counts in the Information. (Mins., ECF No. 14.) On February 1, 2023, Defendant was released and ordered to abide by the terms and conditions of his release. (*Id.*; Order Setting Conditions of Release, ECF No. 18.) The undersigned accepted Gomez's guilty plea and set a sentencing date. (ECF No. 22.)

Subsequently, on March 15, 2023, the Court revoked Gomez's pretrial release based upon several violations regarding multiple uses of controlled substances, to wit: methamphetamine and marijuana. (*See* ECF Nos. 25-1, 28.) The Court ordered Gomez detained for seven days as a sanction, remanded him immediately to the custody of the U.S. Marshals Service, and ordered Gomez to abide by the previously imposed conditions of release after serving the jail time, including random drug testing. (*See* ECF No. 28.) Gomez was released from DOC on March 21, 2023.

Two days after his release, on March 23, 2023, U.S. Probation Officer Gregory Arriola administered a urinalysis on Gomez, which produced a negative result, and affixed a sweat patch on Gomez's arm. (Decl. 3, ECF No. 29-1.) On March 27, 2023, the sweat patch was removed because the edges of the sweat patch were peeling off. (*Id.*) Gomez explained that his toddler son was picking at the sweat patch while Gomez was asleep. (*Id.*) The device was sent to PharmChem Inc. for confirmatory testing, and the laboratory report received by U.S. Probation on April 10, 2023, indicated positive results for methamphetamine. (*Id.*) Gomez denied using any illicit drugs since his release from

DOC on March 21, 2023. This Petition followed.

### III. DISCUSSION

In a hearing to revoke pretrial release of a defendant, the Government must prove by "clear and convincing evidence that the person has violated any other condition of release" other than committing a federal, state, or local crime. 18 U.S.C. § 3148(b)(1)(B). The clear and convincing standard is more demanding than preponderance of the evidence "and requires that the government 'prove [its] case to a higher probability than is required by the preponderance-of-the-evidence standard." *United States v. Jordan*, 256 F.3d 922, 930 (9th Cir. 2001) (quoting *California ex rel. Cooper v. Mitchell Bros.' Santa Ana Theater*, 454 U.S. 90, 93 n.6 (1981)). "Clear and convincing evidence 'dictat[es] that the thing to be proved is highly probable or reasonably certain. This is a greater burden than preponderance of the evidence, . . . but less than evidence beyond a reasonable doubt . . . ." *Id*. (quoting Black's Law Dictionary 577 (7th ed. 1999)).

At the evidentiary hearing, the Government presented two witnesses, Richard Sheriff, compliance manager for Clinical Reference Laboratory, and Officer Arriola; the Court received four exhibits without objection by Defendant. (Mins., ECF No. 38-1.) Exhibit 2 is the Drug Test Results-Client Test Log for Gomez for the period from March 15, 2023 to May 3, 2023, which all show negative results. Exhibit 3 is the chain of customary sheet for the sweat patch collected on March 27, 2023, and the laboratory result showing a positive result for methamphetamine from the sweat testing.

As an initial matter, the Court clarified when Gomez was on pretrial release to determine if he violated his conditions of release. Based on the record in this case, Gomez's pretrial release was revoked on March 15, 2023. That same day, he was remanded and incarcerated, then on March 21,

2023, Gomez was released. By definition, Gomez was not on pretrial *release* when he was incarcerated. His pretrial release and supervision resumed *once* he was released from the DOC on March 21, 2023. As such, the Court found that Gomez was not on pretrial release while he was incarcerated between March 15, 2023 and March 21, 2023.

Next, the Court had to reconcile a positive sweat patch result with two negative urinalyses. Specifically, a sweat patch was applied on March 21, 2023 and removed on March 27, 2023. Urinalyses were conducted on both the day the sweat patch was affixed and when it was removed. While the sweat patch tested positive for methamphetamine, the two urinalyses tested negative.

The Court relied on the testimony presented during the hearing to ascertain the limitations on drug detection from the two methods. Mr. Sheriff testified that sweat patches are as reliable as urinalyses. Both Mr. Sheriff and Officer Arriola stated that a sweat patch can generally detect controlled substance usage up to twenty-four to forty-eight hours *prior* to application of the sweat patch and during the period the sweat patch is affixed. However, Mr. Sheriff testified to an exception – a sweat patch can also detect use of a controlled substance *up to ten days* prior to application for *chronic* users depending on various factors such as their metabolism and dosage. As for urinalyses, Officer Arriola stated that those tests can detect a controlled substance used up to four days prior.

The Court then applied the temporal limits of drug testing to the facts of the instant case. The general rule for sweat patches dictate that the sweat patch affixed on March 21, 2023 could detect use of a controlled substance up to two days prior, March 19, 2023. However, the record indicates that Gomez was a chronic user as he tested positive for methamphetamine use at least four times in February 2023 and admitted to using it on March 7, 2023. Thus, applying the exception for sweat

patches, the sweat patch affixed on March 23, 2023 could detect controlled substance use up to ten days prior—from March 13, 2023 to the date of the sweat patch removal on March 27, 2023.

This timeline is adjusted for the negative urinalyses. First, a urinalysis collected from Gomez on March 15, 2023 tested negative, which reveals that Gomez did not use a controlled substance up to four days prior, *i.e.,* March 11, 2023. Thus, Gomez did not use a controlled substance from March 11, 2023 through March 15, 2023. Second, a urinalysis collected from Gomez on March 23, 2023 tested negative, which reveals that Gomez did not use a controlled substance up to four days prior, *i.e.,* March 19, 2023. Thus, Gomez also did not use a controlled substance from March 19, 2023 through March 23, 2023. Third, a urinalysis collected from Gomez on March 27, 2023 tested negative, which reveals that Gomez did not use a controlled substance up to four days prior, *i.e,.* March 24, 2023. Thus, Gomez still did not use a controlled substance from March 24, 2023 through March 27, 2023.

Synthesizing the dates from the negative urinalyses indicating no methamphetamine use from March 11, 2023 through March 15, 2023, and March 19, 2023 through March 27, 2023, with the positive sweat patch that indicates probable methamphetamine use some time between March 13, 2023 through March 27, 2023, Gomez probably ingested methamphetamine sometime between March 16, 2023 and March 18, 2023. In its closing argument, the Government argued that Gomez ingested methamphetamine sometime between March 16, 2023 to March 19, 2023. However, these time frames are both during the period that Gomez was incarcerated and not on pretrial release and supervision. Therefore, the Court found that the Government did not meet its burden to prove by clear and convincing evidence that Gomez violated the terms and conditions of his pretrial release; it did not prove that it is "highly probable or reasonably certain" that Gomez used methamphetamine after he

was released from DOC on March 21, 2023. Accordingly, the Court DENIED the petition to revoke pretrial release (ECF No. 29).

SO ORDERED this 1st day of June, 2023.

RAMONA V. MANGLONA
Chief Judge